# WOODS *v.* WOODS.

## (*Jackson.*    May 5, 1897.)

1. LIMITATIONS, STATUTE OF.    *For protection of decedents' estates begin to run, when.*

   The periods of two and three years within which resident and nonresident creditors, respectively, must bring suit against personal representatives, do not begin to run until six months after their qualification, during which time they are exempt from suit, or from date of accrual of cause of action, if that occurs later.    (*Post, pp. 53, 54.*)

   Code construed: §§ 4481, 4451, 4012, 4007 (S.); §§ 3481, 3454, 3117, 3112 (M. & V.); §§ 2784, 2760, 2279, 2274 (T. & S.).

   Cases cited and approved: Bright *v.* Moore, 87 Tenn., 186; Jones *v.* Whitworth, 94 Tenn., 617; Trott *v.* West, 9 Yer., 433; Bradford *v.* McLemore, 3 Yer., 318.

2. SAME.    *Operate against creditors of insolvent estates.*

   The statutes of limitations requiring resident and nonresident creditors to bring their suits against personal representatives within two and three years, respectively, after qualification, or after accrual of cause of action if that occurs later, operate against creditors of insolvent estates, after suggestion and advertisement of insolvency, as well as against creditors of solvent estates.    (*Post, p. 54.*)

   Code construed: §§ 4481, 4012 (S.); §§ 3481, 3117 (M. & V.); §§ 2279, 2784 (T. & S.).

   Cases cited and approved: Latta *v.* Sumerow, 4 Lea, 489; Hearn *v.* Roberts, 9 Lea, 365; Prewett *v.* Goodlett, 98 Tenn., 82.

3. SAME.    *Running of, not arrested by deposit of claim with personal representative of insolvent estate.*

   The deposit of a note with the executors of an insolvent estate, and their recognition of it in their annual statement, and otherwise, as a "filed claim," does not arrest or prevent the running of statutes of limitation, or relieve the creditor from the necessity of filing his claim in due time in Court administering the estate.    (*Post, p. 55.*)

Code construed: §§ 4072, 4070 (S); §§ 3177, 3175 (M. & V.); §§ 2332, 2330 (T. & S.).

Cases cited and approved: Bates *v.* Elrod, 13 Lea, 156; Prewett *v.* Goodlett, 98 Tenn., 82.

4. SAME. *Request for delay not sufficient to arrest, when.*

That a creditor presented his claim to the executors of an estate for payment, left it with them, taking their receipt therefor, and was thereafter put off by their statements, made from time to time, that their attorneys had not fixed the matter up, does not constitute such special request for delay by the executors as will, under the statute, suspend or prevent the running of the statute of limitations in favor of the estate. (*Post, pp. 55-57.*)

Code construed: §§ 4482, 4013 (S.); §§ 3482, 3118 (M. & V.); §§ 2785, 2280 (T. & S.).

Cases cited and approved: Trott *v.* West, 9 Yer., 433; Bank *v.* Leath, 11 Hum., 515; Birdsong *v.* Birdsong, 2 Head, 603; Ricketts *v.* Ricketts, 4 Lea, 163; Puckett *v.* James, 2 Hum., 565.

5. SAME. *For protection of estates, may be interposed by heirs and legatees.*

Heirs and legatees, when impleaded by creditors in an action against the personal representative, may interpose, for the protection of their rights, the statutes of limitations of two and three years within which suit must be brought against the personal representative by resident and nonresident creditors, respectively, although these statutes were originally intended for the benefit of the personal representative only. (*Post, pp. 57-59.*)

Cases cited and approved: Armstrong *v.* Dunlap, 3 Lea, 191; Davis *v.* Davis, 5 Lea, 179; Byrn *v.* Fleming, 3 Head, 663; Armstrong *v.* Croft, 3 Lea, 194.

6. SAME. *Running of, not prevented by existence of a will.*

The running of the statute of limitations requiring suit to be brought against personal representatives within two and three years, is not prevented in favor of a creditor by the fact that there was a will which such creditor had a right to bring into court for construction, where the will was promptly probated, and he was entitled to nothing thereunder. (*Post, pp. 59-63.*)

Woods *v.* Woods.

7. WILLS. *Debts are not fixed as an absolute charge upon life insurance.*

The personal creditors of a testator cannot enforce the payment of their claims from insurance money on the life of testator, as a fixed charge thereon, under a provision in the will that he wishes his executors to pay from the proceeds of such insurance any personal indebtedness owed by him, after exhausting his other estate in connection with a subsequent provision, that it is his intention to prohibit the executors from using any of such money for the payment of debts of a firm of which he was a member, but to "permit" them to use such fund in payment of his personal indebtedness, and that the former provision shall be so read as to leave to the "discretion" of the executors "which, if any," of the personal debts they shall pay from such fund. (*Post, pp. 59–63.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

CARY & EWING for Complainant.

MORGAN & McFARLAND for Defendants.

CALDWELL, J.   On the twenty-third of November, 1896, Louis Woods filed this bill for himself and on behalf of other persons not named, to have the administration of the estate of Frank F. Woods, deceased, transferred from the County Court to the Chancery Court.   He alleged that the decedent departed this life testate in March, 1892; that letters testamentary were granted to J. L. Woods and R. L. Woods April 6,

1892; that the executors suggested the insolvency of the testator's estate in January, 1893, and advertised for the filing of claims by the tenth of April, 1893; that the testator, at the time of his decease, was indebted to the complainant in the sum of $895.08, by note, three months past due; that complainant deposited the note with the executors for payment, and took a receipt therefor, April 20, 1892, nine months prior to the suggestion of insolvency, and they "included it in their list of filed claims," set out in their annual statement made to the County Court in February, 1894, more than twelve months subsequent to the suggestion of insolvency; that complainant had not regained possession of his note, or been allowed any *pro rata* payment thereon from the fund of more than $1,000, distributed and yet in the County Court for distribution, but had been put off by the executors, from time to time, "with the statement that their attorney had not fixed the matter up." The executors, the only child of the testator, and her guardian, demurred to the bill, and for cause of demurrer said the action of complainant was barred by the statute of limitations of two years in favor of personal representatives. The Chancellor sustained the demurrer and dismissed the bill. Complainant appealed.

Executors and administrators are exempt from suit for six months after qualification (Code, § 2274; M. & V., § 3112; Shannon, § 4007; *Bright* v. *Moore*, 87 Tenn., 186; *Jones* v. *Whitworth*, 94 Tenn., 617),

and that period is not to be taken as a part of
the time limited for the commencing of actions against
them (Code, § 2760; M. & V., § 3454; Shannon,
§ 4451; 87 Tenn., 186; 94 Tenn., 617). Conse-
quently, the statutes, which require that demand be
made and suit brought against personal representa-
tives by resident creditors "within two years," and
by nonresident creditors "within three years," after
qualification (Code, §§ 2279, 2784; M. & V., §§ 3117,
3481; Shannon, §§ 4012, 4481), are spoken of and
applied, respectively, as two years and six months
and three years and six months statutes. The two
periods added make two and a half years in one case,
and three and a half in the other case. These two-
year and three-year statutes begin their operation
at the end of the six months after the qualification
of the personal representative, if the creditor's cause
of action has then accrued, otherwise they begin later
and when the accrual occurs (*Jones* v. *Whitworth*, 94
Tenn., 616, 617; *Trott* v. *West*, 9 Yer., 433; *Brad-
ford* v. *McLemore*, 3 Yer., 318), and they have the
same application to creditors of insolvent estates, after
the suggestion and advertisement of insolvency, as to
those of estates that are solvent. *Latta* v. *Sumerow*,
4 Lea, 489; *Hearn* v. *Roberts*, 9 Lea, 365; *Prewett*
v. *Goodlett*, 38 S. W. R., 434 (S. C., 98 Tenn.,
82).

These executors were qualified April 6, 1892.
Complainant's cause of action had then accrued, his
note being past due, and the bill was filed Novem-

ber 23, 1896; hence, the two-year statute, which was the one applicable to him as a resident creditor, began to run October 6, 1892, and completed its course and effectually barred the action long before the filing of the bill, unless the deposit of the note with the executors, April 20, 1892, and their recognition of it, in February, 1894, as one of the "filed claims," shall be regarded as the equivalent, in law, of a suit begun.

Complainant contends that the effect of the deposit, which was made before the two years began, and of the recognition, which occurred within the two years, was to arrest the operation of the statute and prevent the bar; and that the filing of this bill is but another step taken for the collection of a claim previously brought within the requirement of the statute.

This is not a sound contention. Whatever the complainant and the executors may have intended by what was done prior to the filing of this bill, it was not, in legal contemplation, the commencement of an action or tantamount thereto, and therefore was not sufficient to arrest the running and prevent the bar of the two-year statute.

If a creditor, after demanding payment of his debt, should delay suit for a definite time, at the special request of the personal representative, the time of such delay would not be counted against him: Code, §§ 2280, 2785; M. & V., §§ 3118, 3482; Shannon, §§ 4013, 4482. But the complainant does

not bring himself within this rule. The allegations
that he presented his note for payment, left it with
the executors and took their receipt for it, and
that they thereafter put him off from time to time
"with the statement that their attorney had not
fixed the matter up;" fall short of the requirement.
They disclose a demand by the creditor, but no
"special request" by the executors for delay, whereas
both were requisite to the suspension of the statute.
*Trott* v. *West*, 9 Yer., 433; *Bank* v. *Leath*, 11
Hum., 515; *Birdsong* v. *Birdsong*, 2 Head, 603;
*Ricketts* v. *Ricketts*, 4 Lea, 163. A demand may
be inferred from a special request for delay (*Puckett*
v. *James*, 2 Hum., 565), but a special request for
delay cannot be implied from the fact of delay.
The special request must be distinctly alleged and
affirmatively proven.

The suggestion of insolvency and advertisement
for the filing and proof of claims orperated, *ipso
facto*, as an injunction against the bringing of any
suit against the executors (Code, § 2332; M. & V.,
§ 3177; Shannon, § 4072; *Bates* v. *Elrod*, 13 Lea,
156), and devolved upon the complainant the duty
of filing and authenticating his claim in the County
Court, within the time fixed in the advertisement,
or before an appropriation of the funds of the es-
tate should be made, upon the penalty of having it
forever barred both in law and equity. Code, § 2330;
M. & V., § 3175; Shannon, § 4070.

Placing his note in the hands of the executors did

not relieve him of the necessity of filing it in the County Court, where all claims were to be adjudicated and the funds distributed. His failure to take the latter step, left the statute in full operation, and, at the end of two years and six months from the qualification of the executors, his remedy was effectually barred. *Prewett* v. *Godlett*, 38 S. W. R., 434 (S. C., 98 Tenn., 82). The fact that the executors, in their annual statement, made in February, 1894, mentioned the note as one of the "filed claims," cannot change or prevent this result. That only meant that the note had been deposited or filed with them, and they had no power, if they had so intended, to give that act on the part of complainant the force and effect of a filing in the County Court.

The demurrer of the executors was separate from that of the guardian and his ward, though the two raised the same question. Complainant insists that even though the defense interposed thereby be good as to the former, it was not so as to the latter, and that the Chancellor should in no event have sustained the demurrer of the guardian and his ward. Unquestionably, the two and three years statutes of limitation relate in terms to actions against personal representatives, and are primarily for their defense (*Armstrong* v. *Dunlap*, 3 Lea, 191; *Davis* v. *Davis*, 5 Lea, 179); nevertheless, they are available to the heirs and distributees, devisees and legatees, also, when they are impleaded by the creditors. The

Court, in the former of the two cases last cited, referring to the two-year statute, said : "The statute of limitations pleaded is intended for the protection of the estates of decedents, in terms applies to actions against executors and administrators, and may be relied on by the personal representative or the heirs, when sued as such to reach the property descended." 3 Lea, 194, 195.

In the latter of those cases, the Court said of the same statute: "And all our decisions hold that the defense, by the very terms of the statute, is limited to the personal representative. No third person, not even a surety, can rely upon it. 5 Lea, 182.

The heir and distributee, devisee and legatee, are not third persons in the sense here contemplated. On the contrary, they are the persons primarily concerned, where the creditors seek the subjection of property that would otherwise pass to them under the laws of descent and distribution in one instance, and under the will in the other. Persons so vitally interested need not stand by and wait for the personal representative to make a defense intended primarily for their benefit. The personal representative is bound, at his peril, to plead the two and three-year statutes, and, if he fails to do so, he is guilty of a *devastavit* (*Byrn* v. *Fleming*, 3 Head, 663), and thereby renders himself personally liable to the person who might otherwise have received the assets used in payment of the barred debt. This person,

however, whether an heir, distributee, devisee, or legatee, is not confined to his action against the personal representative, but, when impleaded by the creditor in the first instance, he may interpose the statute, defeat the claim, and prevent the consumption of the assets.

In another branch of his bill the complainant sought relief through the construction and enforcement of his debtor's will, which was exhibited for the inspection and consideration of the Court, and is as follows:

"*Item First.*—I wish all my just debts paid out of any money which may come into the hands of my executors herein appointed, except from life insurance policies.

"*Item Second.*—I wish my executors to collect my life insurance, and especially on policy No. 265,-178 in the New York Life Insurance Company, for $10,000, and from the proceeds pay, first, any balance of personal indebtedness I may owe after exhausting my other estate, real and personal, except a possible indebtedness mentioned in the third and next item of this will.

"*Item Third.*—I am now a partner in the firm of Woods & Woods, Memphis, Tenn. My interest in that firm, and its assets and good will, should be worth more than my portion of the debts of the firm and a note given by me to R. J. Woods. I do not, therefore, wish any of my life insurance money to be used in the payment of the indebted-

ness of the firm of Woods & Woods, or of any possible indebtedness to the firm, or any of the members thereof, or to the payment of the note given by me to R. J. Woods and growing out of my account with said firm. Nor do I wish my estate so administered that my personal creditors shall be required to look first to my life insurance fund, leaving my other estate for the firm debts, my intention being, first, to prohibit my executors from using any of the insurance fund for the payment of any of the debts growing out of the firm business, but at some time permit them to use this fund in payment of any personal indebtedness I may owe, which they, my executors, may, in their discretion, pay from same; and item second of this will shall so read as to leave to the discretion of my executors which, if any, of my personal debts they shall pay out of this life insurance fund.

"*Item Fourth.*—I give all my estate, real and personal and mixed, to my daughter, Pauline H. Woods, with the condition next herein set out.

"*Item Fifth.*—If my daughter, Pauline H. Woods, shall die before marriage or before coming of age, then I wish brothers Julian and Robert Woods to have all my estate, real, personal, and mixed, each an equal share.

"*Item Sixth.*—I make my brothers, Julian L. and Robert L. Woods, my executors." . . .

The construction suggested and insisted upon by the complainant is, that the testator unconditionally

directed all of his personal debts, not connected with or growing out of the business of Woods & Woods, to be paid in full, though it should be necessary to use the fund collected on his life insurance policy for $10,000 for that purpose; that this direction fixed an absolute charge or trust upon the latter fund in favor of the owners of those favored personal debts, and that the "discretionary powers" vested in the executors "refer solely to the debts of the firm and those growing out of the firm business." He alleged that the executors had collected the $10,000 policy, that his note was one of the favored personal debts, and, in that view, he sought payment from that fund.

The testator's daughter and her guardian demurred to this branch of the bill, and for cause of demurrer said that the will did not fix any charge or trust upon the insurance fund in favor of any creditor, but only gave the executors discretionary power to pay such of the preferred debts as they might choose, if any, out of that fund. The Chancellor sustained this demurrer, and dismissed that part of the bill also; and from his action in that behalf the complainant appealed.

The second item of the will undoubtedly indicates a wish on the part of the testator to have any unpaid balance of his personal debts (that class to which complainant's note was alleged to belong) paid from the proceeds of the $10,000 life insurance policy; but in the third item the testator became

his own interpreter and greatly modified his previous language. In the conclusion of the latter item he said plainly that it was his intention "to prohibit" his executors from using any of the insurance fund in payment of any debt connected with the firm or business of Woods & Woods, and to permit "them, in their discretion," to use it in payment of his personal debts; and, by way of emphasis, he further said: "And item second . . . shall so read as to leave to the discretion of my executors which, if any," of the debts of the latter class shall be paid out of the insurance fund. Looking to the whole of the will in respect of the insurance fund, the testator's interpretation with the rest, it is clear that he intended to give his executors the mere power to pay from that fund the unpaid balance of all, or some, or none of his personal debts, as "they, in their discretion," might see fit to do. He left it for them to decide for themselves "which, if any," of such debts should be so paid.

Manifestly, the testator's personal debts were not thereby made a charge upon the insurance fund, nor was a trust thereby created in their favor. The owners of those debts have no claim against that fund that can be enforced by the Courts. They acquired no fixed or tangible right under the will, and must abide the voluntary action of the executors.

Finally, the fact that there was a will, and that the complainant had a right to bring it into Court for construction, did not prevent the operation of

Woods *v.* Woods.

the two-year statute of limitations against his note. The will was promptly probated, he was entitled to nothing under it, and the accrual of his cause of action was in no way dependent upon a construction of the will; consequently, the operation of the statute was not suspended, but ran its course without interruption.

Affirm the decree.